IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. 4:23-cr-45 |
| | ) |
| DEJA NICOLE TAYLOR, | ) |
| Defendant. | ) |

**POSITION OF UNITED STATES
WITH RESPECT TO SENTENCING FACTORS**

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual*, § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Lisa R. McKeel and Peter G. Osyf, Assistant United States Attorneys, hereby represents that it has reviewed the Probation Office's Pre-Sentence Report ("PSR") and that it does not dispute any of the factors or facts set out therein.

The defendant, DEJA NICOLE TAYLOR, pled guilty to Counts 1 and 2 of the Criminal Information; Unlawful User of Controlled Substance in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8) (Count 1), and Make a False Statement During Purchase of Firearm, in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2). (Count 2). The maximum sentence for Count 1 is 15 years in prison and not more than three (3) years of supervised release. The maximum sentence for Count 2 is ten (10) years in prison and not more than three (3) years less of supervised release. The Guideline calculation for this offense is 18 to 24 months in prison based upon a Total Offense Level of 15 and a Criminal History Category I. The Guideline computation is not in dispute by either party.

The United States intends to call witnesses and present evidence at the sentencing hearing to support facts pertinent to the sentencing factors that are not contained within the PSR, some of which are addressed below. Additionally, it is the position of the United States that this Honorable Court can, and should, consider the community impact and victim impact statements submitted to the United States Probation Office in this case. *See United States v. Fowler*, 948 F.3d 663, 667–68 (4th Cir. 2020) ("[S]entencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence." (quoting *Pepper v. United States*, 562 U.S. 476, 480, 131 S. Ct. 1229, 179 L.Ed.2d 196 (2011))).

The United States submits that the Court should sentence the defendant to a term of imprisonment consistent with the middle of the sentencing guidelines range, specifically 21 months. The United States submits that such a sentence is sufficient but not greater than necessary to comply with the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

## PROCEDURAL BACKGROUND

On June 5, 2023, the United States filed a Criminal Information charging TAYLOR with Unlawful User of Controlled Substance in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(8) (Count 1), and Make a False Statement During Purchase of Firearm, in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2). (Count 2). On June 12, 2023, the defendant pled guilty with a plea agreement before the Honorable Douglas E. Miller, United States Magistrate Judge. On June 27, 2023, this Honorable Court accepted the pleas of guilt and found the defendant guilty of both Counts 1 and 2 of the Criminal Information.

The United States and defendant agreed that the applicable Guideline range would be 18 to 24 months in prison and the sentence that the Court would impose would be no more than 24 months at the Bureau of Prisons. Sentencing is set for November 14, 2023.

## **DISCUSSION OF SENTENCING GUIDELINES, FACTORS AND ARGUMENT**

### **Sentencing Guidelines**

The United States Supreme Court ruled in *United States v. Booker*, 543 U.S. 220 (2005), that the Sentencing Guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the Guidelines "does not mean that they are irrelevant to the imposition of a sentence." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006); *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006). The Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Prior to sentencing the defendant, the Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). A sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

As stated previously, the Guideline calculation for this offense is 18 to 24 months in prison based upon a Total Offense Level of 15 and a Criminal History Category I.

**18 U.S.C. § 3553(a) Sentencing Factors**

Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. The Court should also consider any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and the need to provides restitution to any victims.

**Section 3553(a)(1) Factors: Nature and Circumstances of the Offense**

In reviewing the Section 3553(a) factors, the nature and circumstances of the offense are serious. On January 6, 2023, six-year-old male child, John Doe, shot and severely injured first grade schoolteacher A.Z. in a classroom at Richneck Elementary School in the City of Newport News, Virginia. Deputies and officers from the City of Newport News Sherriff's Office and Police Department (NNPD) responded to the school pursuant to a 911 call. A Taurus, Model PT111, G2A, 9mm semiautomatic handgun, serial number ADE404990 was found and collected from the classroom by a crime scene technician with the NNPD. This firearm had been purchased by the defendant, a marijuana abuser, whose chronic, persistent and, indeed, life-affecting abuse extends this case far beyond any occasional and/or recreational use.

4

On January 6, 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents and Task Force officers (hereinafter "Agents") responded to the Richneck Elementary School to assist the NNPD with the shooting incident. Agents initiated an emergency trace of the Taurus firearm. The trace revealed that the firearm was purchased by DEJA NICOLE TAYLOR on July 19, 2022, from Winfree Firearms, Inc. in Yorktown, Virginia. Agents went to Winfree Firearms and obtained a copy of the ATF Firearm Transaction Record, Form 4473, along with the Virginia Firearms Transaction Record for the Taurus firearm.

On January 12, 2023, Agents conducted a controlled garbage bin search at the defendant's home located in Newport News. Agents found copious amounts of marijuana, and packaging for marijuana edibles.

On January 19, 2023, Agents executed a federal search warrant at TAYLOR's home. TAYLOR was not present, but her grandfather, C.T., was present and told Agents that on the evening of January 6, 2023, TAYLOR had taken some of her belongings in a suitcase and left C.T.'s residence and began staying with TAYLOR's mother. During the search, the following items were seized from TAYLOR's bedroom: narcotics packaging, narcotics paraphernalia, suspected marijuana, and marijuana residue. C.T. showed agents garbage bags that he had placed in the garage after he cleaned out the vehicle that he had loaned to TAYLOR. According to C.T., the car had broken down and he cleaned it out. C.T. placed TAYLOR's belongings in the garbage bags a few weeks before the shooting. The following items were found in the trash bags: a red box of ammunition, a jar of suspected marijuana, narcotics packaging, and a black firearm barrel lock. Agents called TAYOR's mother, C.H., to ask for consent to search C.H.'s apartment and C.H. agreed. TAYLOR signed two consent forms, one for her cellphone and the other to search her

living area within C.H.'s apartment. TAYLOR also consented to Agents searching her purse. The following items were found in TAYLOR's purse; a glass jar with suspected marijuana, marijuana paraphernalia, used marijuana cigarettes, and marijuana packaging material. The following items were found in the bedroom occupied by TAYLOR in C.H.'s apartment: approximately 24.5 grams of marijuana, marijuana edible packaging, marijuana paraphernalia including Dutch Master cigar wraps, plastic bags, and burnt marijuana cigarettes. The marijuana items were field tested positive for marijuana. A lockbox was not found in either of TAYLOR's rooms at C.H.'s apartment or C.T.'s house, nor was a trigger lock or key to a trigger lock ever found. TAYLOR's cellphone contents were downloaded. Numerous messages were found with other individuals that illustrated the pervasive scope of TAYLOR's consistent and prolonged marijuana use.

During the investigation, Agents found a police report from the Williamsburg Police Department (WPD). The report stated that on Saturday, April 3, 2021, at approximately 7 p.m., TAYLOR was operating a 2006 Pontiac G6 registered to another person on Richmond Road when she was stopped for speeding by an officer with the WPD. The officer approached the vehicle and detected an overwhelming odor of marijuana coming from the vehicle. TAYLOR was in the vehicle with two other persons. Marijuana was in plain view inside the vehicle, so the officer conducted a search of the vehicle. John Doe, four-years old at the time, was in the vehicle and directly next to him were several marijuana edibles that looked like rice treats. A backpack claimed by another person was searched and it contained numerous individually packaged marijuana rice treats, gummies containing THC, suspected crack cocaine, two large bags of marijuana, two packages of "BackpackBoyz" marijuana from California, suspected oxycodone pills, green plant material, a smoking device, and more edibles. Digital scales were also found inside the vehicle.

TAYLOR's purse was searched, and marijuana edibles and three unknown white pills were found. TAYLOR was advised of her *Miranda* rights, and she denied all knowledge of drugs inside the vehicle.

On July 19, 2022, TAYLOR completed a Bureau of Alcohol, Tobacco, Firearms and Explosives Firearms Transaction Record, ATF Form 4473 as required to purchase the Taurus firearm. In Section B of TAYLOR's Form 4473, question 21.e, reads:

> *Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?*
> **Warning:** *the use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside.*

TAYLOR checked the box indicating an answer of "No" to the question knowing that she was, in fact, an unlawful user of marijuana at the time of purchasing the Taurus firearm. Furthermore, at the end of Section B, TAYLOR signed certifying:

> *I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473……I understand that a person who answers "yes" to any of the questions 21.b through 21.k is prohibited from receiving or possessing a firearm… I also understand that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law.*

The defendant, DEJA NICOLE TAYLOR, the mother of John Doe was asked to come the NNPD where John Doe was being held and she agreed. NNPD detectives spoke with John Doe in the presence of TAYLOR and John Doe's father. The interview room was being monitored and when the detectives left the room, John Doe's father asked John Doe why he got mommy's gun and John Doe responded that he climbed the dresser to get it. The detectives interviewed

TAYLOR. TAYLOR told detectives, in sum and substance regarding the firearm, that on the day of the shooting she was awakened by her grandfather, C.T., around 2:00 p.m. and was told that there was a shooting at the school. She stated that she grabbed her purse off the dresser and it "felt a little light." TAYLOR looked inside her purse and could not find her firearm. She stated that the lockbox wasn't on the dresser either. She told the detectives that she had a Taurus G2C 9mm black and grey firearm secured with a bright red trigger lock. TAYLOR told detectives the key for the trigger lock was tucked under her mattress in her bedroom. TAYLOR stated that she did not keep her gun loaded. She specifically stated that on the morning of the shooting she took the gun out of the lockbox and put the trigger lock on the gun. TAYLOR stated that she normally has the gun in her purse when she goes out and that her purse is never unattended. When she comes back home, she comes into her room, shuts her door so John Doe cannot come in, takes the gun out of her purse, puts it in the lock box, and she hides the lock box on top of the dresser. TAYLOR also told detectives that she has owned two guns, a Hi-Point and the Taurus. She told detectives she purchased the Hi-Point two years ago and the Taurus last May[1] because she had a stalker which she reported to police.

On January 13, 2023, TAYLOR was reinterviewed by NNPD detectives and Agents related to her drug use and firearm possession. The defendant stated, in sum and substance, that she used a red trigger lock to secure the firearm before the shooting and the safety was on, the gun was not loaded, and she put it in her purse and placed the purse on a very high dresser in her bedroom. TAYLOR claimed that the key to the trigger lock was on her key chain which was at her mother's house. The magazine for the firearm was under her bed in her room at her grandfather's house.

---

[1] According to TAYLOR's Form 4473 for the Taurus, she purchased the firearm on July 19, 2022.

TAYLOR stated that she never keeps the magazine and firearm together. She claimed that the morning of the shooting before John Doe went to school, she took her purse down off the dresser and went to a convenience store and that morning she did not put the gun parts back together. TAYLOR told Agents she could feel the weight of her purse and it did not feel like the gun was missing. TAYLOR stated that she always keeps the gun in her purse, and she places her purse on a very high dresser which TAYLOR can only reach if she puts on boots or uses a "grabber thing". TAYLOR admitted that she purchased the Taurus firearm in July 2022. Before that firearm, TAYLOR purchased a Hi-Point firearm sometime in February 2021 because she allegedly was being stalked. TAYLOR sold that gun to a black male named "Marvin" through a deal that TAYLOR's dad set up in approximately June 2022 in Newport News. Regarding TAYLOR's marijuana use, she originally denied using any drugs. However, TAYLOR ultimately admitted that she began smoking marijuana at age 17 in high school and that she used marijuana daily until she became pregnant with John Doe. TAYLOR claimed to have stopped using marijuana until John Doe was eight months old and then began using marijuana daily again. TAYLOR claimed that she stopped using marijuana completely approximately a week after the traffic stop in April 2021 in Williamsburg. She maintained that she did not use marijuana again until the week of the shooting when John Doe's father got TAYLOR some marijuana after the shooting, and she smoked two blunts. By the end of the interview, TAYLOR admitted, when faced with inconsistences in her statements, that the night before the shooting she may not have put the trigger lock on the gun. But TAYLOR claimed to remember disassembling the gun and putting it up on the dresser before going to bed.

Also during the investigation, Agents learned that the January 6, 2023 shooting was not the first time TAYLOR's Taurus handgun was fired in public. Records confirmed that TAYLOR rented a U-Haul van on December 23, 2022, from a U-Haul equipment center located on J. Clyde Morris Blvd. in Newport News. The vehicle was scheduled to be returned to the same location by December 24, 2022. It was not. When TAYLOR failed to return the U-Haul van by December 24, 2022, U-Haul made repeated efforts from 12/26-28/2022 to recover the van by contacting the defendant via phone calls and demand letters.

The U-Haul van TAYLOR rented was found abandoned in the area of Bellfield Drive in Newport News on January 8, 2023, and was towed and impounded that same day by Gurganus Automotive Services. The van was not drivable, there were no keys, and the passenger side, rear-door-glass was broken.

Selected text messages[2] exchanged between TAYLOR and John Doe's father from Christmas day, 2022, to December 27, 2022, explain what happened to the U-Haul van. It should be noted that this was the month before the Richneck shooting. These text messages, which are somewhat vulgar in nature, reveal that the defendant shot at John Doe's father due to her ire at seeing John Doe's father's girlfriend. A brief selection follows:

> **TAYLOR**: *I don't care u don't want me with nobody I don't want u with nobody. U said u was making a play not talking to a bitch*
>
> **TAYLOR**: *U lied. If nothing happened u could've told me where u were*
>
> **John Doe's Father**: *Yo… u kouldve killed me*
>
> **TAYLOR**: *And who u were with.*

---

[2] All text messages have been turned over to defense counsel. The United States can provide the entirety of the texts exchanged to the Court at sentencing.

**TAYLOR**: *I was never going to hurt u*

\* \* \*

**TAYLOR**: *Location needs to be on all the time. U ran from me with a bitch in the uHal tha's in my name. I told u if I saw a bitch I was gone up that shit. U was gonna hit me for finding y'all and that's why I really was upset. How u gone walk up on me but not let the bitch out. The bitch that want u.*

\* \* \*

**John Doe's Father**: *I gotta wipe it down and find the casing*

**TAYLOR**: *I will finish my shit. Well we will do that and I'll wear gloves and have somebody take me to leave it somewhere nana is only upset because of what she heard u should've hung up. She couldn't stop me.*

\* \* \*

**TAYLOR**: *U better not leave yo u was gonna call the police on me. I wasn't going to hurt u.*

**John Doe's Father**: *Bro… u almost shot me deja*

**John Doe's Father**: *The bullet is above my head*

**TAYLOR**: *U kept moving the van. I was aiming at the hoe*

\* \* \*

**TAYLOR**: *This why I said I wanted my gun*

**John Doe's Father**: *Oh ok*

\* \* \*

**TAYLOR**: *This bitch is my example don't make me have to pop all of them. This shit stops right here.*

\* \* \*

**John Doe's Father**: *U almost killed me and u still talking about the bitch*

11

This case is not a marijuana case. It is a case that underscores the inherently dangerous nature and circumstances that arise from the caustic cocktail of mixing consistent and prolonged controlled substance use with a lethal firearm. Not once, but twice someone nearly lost their lives because of TAYLOR's offenses of conviction. The defendant's substance abuse affected her parenting, not only due the 2023 shooting, but because of 2021 car stop with her child present. This nature and circumstances of the offense of this matter should weigh heavily on the Court.

**Section 3553(a)(1) Factors: History and Characteristics of the Defendant**

The defendant, age 26, was born and raised in Newport News, Virginia. Her parents did not marry, but she reports that her father remained active in her life, and she had a good relationship with him. He reported that she was provided with the necessities and maintains a very good relationship with her mother and grandparents. At one point in time, she lived with her grandparents and reported they were loving and stayed active in her school activities. She enjoyed playing soccer and the violin as a teenager. PSR ¶ 34. She has five (5) half siblings and no one in her family has a history of substance abuse. Additionally, no one in her family has a criminal record except her father. PSR ¶ 35. She resides with her mother currently. PSR ¶ 39. She has one child, John Doe, age 7. The father of her child has remained active in his life and assisted in raising him. The defendant reports that there has been some domestic violence between her and John Doe's father. He currently has pending assault charges. PSR ¶ 36. According to Child Protective Services (CPS) records, John Doe has taken the defendant's vehicle car keys from her purse on two occasions. On both occasions, John Doe got into the vehicle. On one occasion, he wrecked the car and on another, he refused to get out of the vehicle until the police were called and broke the car window to extract him from the vehicle. PSR ¶ 37. The defendant's grandfather currently has

custody of John Doe. PSR ¶ 38.

The defendant reported that she is in good general health. PSR ¶ 41.

The defendant reported that as a child she was diagnosed with attention deficit hyperactivity disorder (ADHD), depression and anxiety for which she was prescribed medication. She stopped taking medication at age 16. PSR ¶ 43. At age 16, she contemplated suicide. At age 18, she was hospitalized after a car accident in which she told the nurses that she wanted to have the accident. She was diagnosed with Borderline Personality Disorder and anxiety. She was prescribed medication but only took them for a few weeks because she did not like the way they made her feel. At age 22, she attended weekly sessions with the Hampton Community Services Board for six weeks. On July 12, 2023, and August 28, 2023, she was diagnosed with Borderline Personality Disorder, Post Traumatic Stress Disorder, Schizoaffective Disorder and Bipolar Type, Continuous. She began mental health treatment on August 28, 2023. PSR ¶¶ 43-45.

The defendant reported to the Probation Officer that she began using marijuana and alcohol as a teenager. She further stated that she could not remember how often she used marijuana before her son was born. She admitted that she began using marijuana after her son was born but could not estimate how often. She reported that she stopped using marijuana for about a year after being stopped in Williamsburg in April 2021 and then began using again after the shooting incident with John Doe at Richneck Elementary School. PSR ¶ 46.[3] It should be noted that after the defendant pled guilty and was released on certain conditions under Pretrial Services supervision for the instant offense conduct, she violated the order setting the conditions of release, including, that she

---

[3] It should be noted that the defendant admitted in the signed Statement of Facts to being a daily marijuana user for 11 years up to and including July 19, 2022. PSR ¶¶ 8(8) and 46.

not violate federal, state, or local law; unlawfully using and possessing narcotic or controlled substances, failing to attend substance abuse treatment as directed; and failing to submit to drug testing as directed. PSR ¶ 47.

The defendant attended Denbigh High School in Newport News and dropped out in the eleventh grade in 2014. She does not have a GED. PSR ¶ 48.

At the time of the offense, the defendant was unemployed and supported by her mother. She has only sporadically been employed for short periods of time. It appears that the longest employment she had was from 2015 until 2017 at a fragrance outlet in Williamsburg. PSR ¶¶ 49-53.

Finally, the defendant has a Criminal History Category I. She pled guilty to felony child abuse charges in August 2023 in Newport News Circuit Court. The conduct in that offense stems from the current federal offenses. PSR ¶¶ 27-33. The Commonwealth Attorney's Office has agreed to ask for no more than the high end of the guideline range, which is six months in jail. Such a sentence is clearly insufficient to reflect the scope of the offense.

### Section 3553(a)(2): Other Factors

The sentence the court imposes must include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner.

### Argument

The offenses for which the defendant has pled guilty are serious offenses involving a

14

firearm that was used by her child, six years old at the time, to shoot his first-grade schoolteacher at the elementary school he attended. The detrimental impact of the defendant's crimes will be carried and felt by the many children and adults who were impacted by the school shooting their entire lives.

There is nothing in the defendant's background that excuses her criminal behavior. She grew up in a loving home with good relationships with her parents and her grandparents and all her needs were met.

The sentence the Court imposes must also promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from the defendant. A sentence of 24 months in prison will promote a respect for the law, just punishment, and deterrence to criminal conduct, both general and specific. The defendant's blatant disregard for the law, as expressly laid out for her in print, which she dually acknowledged, coupled with her consistent and prolonged marijuana use, nearly caused the loss of life for another human being. A term of imprisonment here is necessary to meet the goal of general deterrence. A custodial sentence in this case will provide the appropriate disincentives to those contemplating similar criminal conduct. *See e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized."). Absent a term of imprisonment for the defendant's criminal conduct, general deterrence may not be achieved. Such a sentence is a clear warning to others who wish to purchase firearms that they must respect the law and treat such a purchase with the seriousness it deserves. The safety of the public and our communities depends on it.

**CONCLUSION**

As a society, the nation has determined that certain categories of individuals cannot be trusted to possess firearms. This includes, especially, those individuals who are under the influence of drugs because it increases the likelihood that the firearm will be used in a dangerous manner – as it certainly was in this tragic case. Based upon the facts of the case, including all relevant conduct, the defendant's criminal history and characteristics as set forth in the PSR and taking into consideration the factors in Title 18, United States Code, Section 3553(a), the United States believes that a term of imprisonment consistent with the high-end of the sentencing guidelines range, specifically 21 months, along with a term of supervised release, is sufficient but not greater than necessary to comply with the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Lisa R. McKeel
Peter G. Osyf
Assistant United States Attorneys
Attorneys for the United States of America
United States Attorney's Office for the
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4032
Fax: (757) 591-0866

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November 2023, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system, which will send notification of such filing (NEF) to the following:

James S. Ellenson, Esq.
101 25th Street
Suite 756
Newport News, Virginia 23607
E-mail: jseatty@aol.com

Eugene J. Rossi, Esq.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
E-mail: grossi@carltonfields.com

And I hereby certify that I have e-mailed the document to the following non-filing user:

Jeffrey A. Noll
Senior United States Probation Office
827 Diligence Drive
Suite 210
Newport News, Virginia 23606

/s/
Lisa R. McKeel
Virginia State Bar No. 28652
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4032
Fax: (757) 591-0866
Email: Lisa.McKeel@usdoj.gov